UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RUBEN JIMENEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 16-00111-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    INTRODUCTION

Plaintiff David Ruben Jimenez ("Plaintiff") challenges the Commissioner's termination of his disability benefits. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.    PROCEEDINGS BELOW

In December 2004, the Social Security Administration determined that Plaintiff was disabled as of January 2003 due to his mental condition. (*See* Administrative Record ("AR") 17, 69, 131.) At that time, the Social Security Administration found Plaintiff had a depressive disorder with anxiety that met section 12.04A and B of 20 CFR Part 404, Subpart P, Appendix 1. (*See* AR 17.)

On April 11, 2013, it was determined that Plaintiff was no longer disabled, pursuant to the Social Security Act,[1] as of April 2013, and was no longer entitled to disability benefits. (AR 69-72.) This determination was upheld upon reconsideration on September 18, 2013, after a case review by a Disability Hearing Officer. (AR 78-87, 89.) On September 26, 2013, Plaintiff filed a written request for a hearing, and a hearing was held on July 8, 2014. (AR 29, 93.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert ("VE"). (AR 31-55.) On July 25, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff's disability ended on April 11, 2013. (AR 12-24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on January 6, 2016. (Dkt. No. 1.)

The ALJ followed an eight-step sequential evaluation process to assess whether Plaintiff continued to be disabled under the Social Security Act. 20 CFR § 404.1594(f). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity through April 11, 2013. (AR 17.) At **step two**, the ALJ found that, as of April 11, 2013, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) At **step three**, the ALJ found that Plaintiff "has had significant medical improvement as of April 11, 2013." (AR 18.) At **step four**, the ALJ found that the medical improvement was related to the ability to work because Plaintiff's impairments no longer met or medically equaled the same listing that was met at the time of the comparison point decision ("CPD"). (*Id.*) Accordingly, the ALJ made no **step five**

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

finding[2] and proceeded to **step six**, where the ALJ determined that Plaintiff continues to have a severe impairment or combination of impairments that "caused more than minimal limitation in [Plaintiff's] ability to perform basic work activities." (AR 18.)

At **step seven**, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a reduced range of light work as defined in 20 CFR 404.1567(b), such that: he could lift and carry twenty pounds occasionally and ten pounds frequently; he could stand and walk, with normal breaks, for a total of four hours in an eight-hour workday, and he could sit, with normal breaks, for a total of six hours in an eight-hour workday; he could occasionally walk over uneven terrain, climb ladders, work at heights, and stoop; and he could frequently perform all other postural activities. In the mental realm, the claimant was limited to understanding, remembering, and carrying out simple, repetitive tasks with no more than occasional public contact.

(AR 19.) Based on the Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff is not capable of performing past relevant work as a sales attendant, stock clerk, or orderly. (AR 22.) At **step eight**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that Plaintiff "was able to perform a significant number of jobs in the national economy." (*Id.*) Accordingly, the ALJ determined that Plaintiff's disability had ended as of April 11, 2013. (AR 23.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to terminate benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial

---

[2] Step four of the eight-step sequential process for determining whether an individual continues to be disabled states that "[i]f medical improvement is related to [the claimant's ability to work, see step (6)." 20 C.F.R. § 404.1594(f)(4).

3

evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises four issues for review: (1) whether the ALJ properly considered Plaintiff's mental condition and limitations; (2) whether the ALJ properly considered Plaintiff's combination of impairments; (3) whether the ALJ properly considered Plaintiff's RFC; and (4) whether the ALJ properly determined that Plaintiff could perform a significant number of jobs. (Joint Stipulation ("JS")

4-5, Dkt. No. 29.) Plaintiff contends that the ALJ failed to properly consider Plaintiff's mental impairments, failed to consider the combined effects of Plaintiff's impairments, failed to properly assess Plaintiff's RFC, and failed to include all of Plaintiff's impairments in the hypothetical posed to the VE. (*See* JS 5-12, 21-23, 25-31, 33-36.) The Commissioner disagrees. (*See* JS 12-21, 23-25, 31-33, 36-37.)

### A. The ALJ Did Not Err In Concluding That Plaintiff's Impairments Did Not Meet Or Medically Equal The Severity Of A Listed Impairment

Plaintiff argues that the ALJ erred in discounting the report of treating psychologist Larisa Levin, M.D., and failed to consider the combined effect of all impairments when determining that Plaintiff's impairments did not meet a listing.[3] (JS 6-9, 12, 22-23.)

#### 1. The ALJ Properly Discounted Dr. Levin's Opinion

Plaintiff contends that the ALJ improperly disregarded the opinions of Dr. Levin, whose opinion would have established that Plaintiff's mental impairments met the criteria for a listed impairment. (JS 8.) The Commissioner contends that the ALJ provided "multiple valid, well-supported reasons" for discounting Dr. Levin's opinion. (JS 17-21.)

#### a. Applicable Legal Standards

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight

---

[3] In Issues 1 and 2, Plaintiff also argues that the ALJ erred in concluding that Plaintiff's mental impairments had improved, erred in not considering the effects of Plaintiff's medications on his functional abilities, and erred in assessing Plaintiff's work capacity. (JS 5, 9-10.) These arguments relate to later steps of the ALJ's eight-step evaluation process and will be addressed in those sections.

than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). However, an ALJ need not accept a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)). When a treating physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### b. Discussion

Dr. Levin completed a Report on Individual with Mental Impairment and a Mental RFC Assessment on May 21, 2014. (AR 467-71.) The report indicates that March 14, 2014 is the period of treatment and date of last exam. (AR 467.) Dr. Levin stated that Plaintiff always appeared "disheveled with poor grooming," and "always looks down." (*Id.*) Dr. Levin noted that Plaintiff had difficulty getting out of bed daily due to "markedly severe depression." (AR 467, 469.) Checking off items from a list, Dr. Levin indicated that Plaintiff had the following impairments: hallucinations; paranoid thinking; blunt affect; flat affect; depression; anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; emotional withdrawal and/or isolation; psychomotor agitation or retardation; decreased energy; feeling of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; memory impairment;

apprehensive expectation; vigilance and scanning; a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and a sense of impending doom occurring on the average of at least once a week; and persistent disturbance of mood or affect. (AR 467-68.) Dr. Levin also indicated that there was evidence of Plaintiff's disorientation to time and place, memory impairment, and perceptual or thinking disturbances (hallucinations or delusions). (AR 469.) In the two-page, checklist-style Mental RFC Assessment, Dr. Levin indicated that Plaintiff was "markedly limited" in all 21 listed abilities. (AR 470-71.)

The ALJ gave Dr. Levin's opinion "no significant weight," noting that it is "not supported by the longitudinal record" or other progress notes from the same treating facility. (AR 19-20; *see* AR 492-93.) Specifically, the ALJ noted that in February 2013, Plaintiff reported to his physician that he had "depression in past (mild now)." (AR 20, 422.) The treatment records also state that Plaintiff "used to see a psych & was on WellButrin – but stopped." (AR 422.) The ALJ noted that Plaintiff began seeking treatment at Hollywood Mental Health in November 2013 "after his benefits ceased and at his representative's referral." (AR 20; *see* AR 475, 482.) Prior to that, Plaintiff stated that he had begun treatment at Didi Hirsch, but he did not continue because the facility wanted to admit him for a three-day evaluation. (AR 20, 497.) The ALJ noted that this was inconsistent with Didi Hirsch's summary in the record. (AR 20.) Didi Hirsch reported that Plaintiff had participated in individual therapy to increase problem solving and coping skills to reduce symptoms of depression. (AR 20, 508.) His last session was on September 16, 2013; Plaintiff's case was closed when he failed to show up to his next session two weeks later and did not respond to outreach attempts. (AR 20, 508.)

The ALJ found that Dr. Levin's report was "brief and conclusory" because her notations "fail to relate her opinion to either objective findings or specific

clinical observations." (AR 20.) The ALJ rejected Dr. Levin's opinion because it was not supported by clinical findings and the checklist-style report did not explain the bases for her conclusions. (*Id.*) This is a specific and legitimate reason for the ALJ to discount Dr. Levin's opinion and instead give more weight to the consultative examiner, who "provided a much better explanation of her opinion" (*id.*). *See Magallanes*, 881 F.2d at 751 (an ALJ may disregard a treating physician's opinion that is brief, conclusory, and lacks clinical findings); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ, however, permissibly rejected [psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions.").

The ALJ also discounted Dr. Levin's opinion because it was founded on unreliable claims. (AR 20.) The ALJ noted that Dr. Levin appeared to rely on Plaintiff's own allegations, and the ALJ had found that Plaintiff was not a fully credible witness.[4] (AR 20; *see* AR 21.) An opinion that is based on a claimant's discredited subjective complaints may be rejected. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Furthermore, the ALJ noted that the severe limitations that Dr. Levin indicated would have been regularly reflected in other treatment notes. (AR 20.) The ALJ found that Dr. Levin's report "lacks neutrality and reliability" and instead "appears to be advocating for the claimant to receive benefits." (AR 20.) Accordingly, the ALJ was permitted to reject Dr. Levin's opinion. *See Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (rejecting a

---

[4] Plaintiff does not challenge the ALJ's adverse credibility finding, and thus that issue is not before this Court. *See Guith v. Berryhill*, No. 1:16-CV-00625 GSA, 2017 WL 4038105, at *8 (E.D. Cal. Sept. 13, 2017) (citing *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)) ("Plaintiff has not contested the ALJ's credibility determination and therefore, he has waived that argument.").

8

physician's opinion that lacked an objective medical basis and instead appeared to advocate for a patient based on the patient's subjective allegations).

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Levin's opinion no significant weight.

///

### 2. The ALJ Properly Assessed Plaintiff's Impairments

Plaintiff contends that the ALJ failed to properly consider Plaintiff's impairments in the "step two" analysis. (*See* JS 5, 12, 22-23.) The Commissioner contends that the ALJ properly considered whether Plaintiff's impairments met or equaled a listed impairment. (*See* JS 24.)

#### a. Applicable Legal Standards

At step two, an ALJ must determine whether a claimant has an impairment or combination of impairments that meet or medically equal the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1594(f)(2). Listed impairments are "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990). To show that a claimant's impairment meets a listing, the claimant must meet all of the specified medical criteria for that listing. *Id.* at 530. To show that an unlisted impairment or combination of impairments is equivalent to a listing, a claimant must provide medical evidence that is equal in severity to all criteria for the most similar listed impairment. *Id.* at 531 & n.10. When determining equivalency, it is irrelevant whether symptoms arise from a single impairment or from a combination of impairments; the inquiry is "whether these impairments *taken together* result in limitations equal in severity to those specified by the listings." *Lester*, 81 F.3d at 829-30 (emphasis in original).

An ALJ "must evaluate the relevant evidence before concluding that a

claimant's impairments do not meet or equal a listed impairment," *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), but it is not necessary to "state why a claimant failed to satisfy every different section of the listing of impairments," *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683 (citing *Lewis*, 236 F.3d at 514); *see Tobin v. Astrue*, No. C 10-02937 SI, 2011 WL 3739537, at *11 (N.D. Cal. Aug. 23, 2011) ("Ninth Circuit authority does not require an ALJ to cobble together an equivalency analysis unless the argument is posed to her." (citing *Burch,* 400 F.3d at 682-83)).

**b. Discussion**

The ALJ found that Plaintiff's impairments "[c]onsidered individually and in combination" did not meet or medically equal a listed impairment as of April 11, 2013. (AR 17.) The ALJ noted that no medical source suggested that Plaintiff's impairments were severe enough to meet or equal a listing, and the ALJ did not find medical evidence to support a finding of such severity. (AR 17-18.) In making this determination, the ALJ considered Listing 1.04 for disorders of the spine and Listing 12.04 for affective disorders. (AR 18.) The ALJ also noted that "the severity of the depressive disorder with anxiety on which the award of benefits was made is no longer present" and that Plaintiff no longer met the criteria for Listing 12.04. (AR 18.)

Plaintiff argues that Dr. Levin's opinion "supports that [Plaintiff] would still meet the criteria for depression and anxiety." (JS 12.) However, as previously discussed, the ALJ correctly gave Dr. Levin's opinion "no significant weight." (AR 19.) Plaintiff also argues that the ALJ failed to consider the combined effect of Plaintiff's physical and mental impairments, including pain, but he does not suggest how. (*See* JS 22-23.) Although a combination of impairments may

10

collectively result in limitations that equal the severity of a listed impairment, *see Lester*, 81 F.3d at 829-30, the ALJ did consider Plaintiff's impairments "in combination" and found that they collectively did not satisfy the criteria for Listings 1.04 or 12.04. (AR 17-18.) Plaintiff does not provide any explanation as to how his combined impairments medically equal another listing.

/ / /

Accordingly, the ALJ did not err in determining that Plaintiff's impairments did not meet or medically equal a listed impairment. *See Tobin*, 2011 WL 3739537, at *10 (ALJ did not err by failing to explain his finding that a claimant's impairments did not meet or equal a listing when the claimant did not present evidence to establish equivalence).

### B.   The ALJ Correctly Determined That Plaintiff Has Had Medical Improvement Related To The Ability To Work

Plaintiff argues that the ALJ erred in finding that Plaintiff's condition had improved to the point that he would be able to work. (*See* JS 5, 12.)

#### 1.   Applicable Legal Standards

At step three, an ALJ must determine whether there has been medical improvement. 20 CFR § 404.1594(f)(3). Medical improvement is any decrease in the medical severity of the impairments that were present at the time of the most recent favorable disability decision. 20 CFR § 404.1594(b)(1). In making this comparison, the ALJ must examine both the current medical evidence and the medical evidence from the time of the CPD. *See* 20 CFR § 404.1594(c)(1) ("Medical improvement is . . . determined by a comparison of prior and current medical evidence . . . ."); *Newmiller v. Colvin*, No. EDCV 15-0139 FFM, 2016 WL 3034670, at *3 (C.D. Cal. May 27, 2016) ("[D]istrict courts within the Ninth Circuit have found error where an ALJ fails to sufficiently examine evidence of disability that existed at the time of the CPD.").

At step four, after finding that a claimant has had medical improvement, an

ALJ must determine whether that improvement is related to the ability to work. 20 CFR § 404.1594(f)(4). If a claimant's impairments no longer meet or equal the same listing upon which the original disability determination was based, the improvement is conclusively established to be related to the ability to work. 20 CFR § 404.1594(c)(3)(i).

///

### 2. Discussion

The ALJ found that, based on the medical evidence, there had been a decrease in the medical severity of Plaintiff's impairments that were present at the CPD. (AR 18.) The ALJ noted that at the CPD, Plaintiff's mental impairment met the criteria for Listing 12.04 A and B "with marked limitations in maintaining concentration, persistence, pace and social functioning." (AR 18.) Plaintiff was being treated by a psychiatrist, Thomas Curtis, M.D., and received psychotherapy, biofeedback, and psychotropic medications. (AR 18; *see* AR 357.) Plaintiff was withdrawn and anhedonic, and he had feelings of worthlessness and diminished self-esteem. (AR 18, 378-79.) Dr. Curtis observed that Plaintiff required assistance with daily chores, cooking, cleaning, and shopping, and he had decreased interest in personal grooming and hygiene. (AR 18, 379.) Dr. Curtis also indicated that Plaintiff had difficulty understanding simple written and oral instructions. (AR 18, 380.)

Regarding the recent evidence, the ALJ noted that psychiatrist Mary Bridges, M.D. completed a complete psychiatric evaluation of Plaintiff on March 7, 2013. (AR 18, 409.) In that examination, Plaintiff reported that, about six years earlier, he had seen a psychiatrist for about six months. (AR 411.) He was no longer seeing a psychiatrist at the time of the evaluation. (*Id.*) The ALJ noted that Dr. Bridges's exam "showed largely normal mental status and little in the way of objective psychological abnormality." (AR 18; *see* AR 413.) In October 2012, a doctor from the East Valley Community Health Center described Plaintiff as being oriented to

time, place, person, and situation with normal insight and judgment. (AR 18, 390.) Plaintiff also demonstrated the appropriate mood and affect. (AR 390.) Treatment records from All for Health in February 2013 report that Plaintiff described his depression as in the past and "mild now." (AR 422.) The ALJ consequently concluded that Plaintiff "has had significant medical improvement as of April 11, 2013." (AR 18.)

///

The ALJ then noted that "medical improvement is established as a matter of law" because Plaintiff's impairments "no longer met or medically equaled the same listing that was met at the time of the CPD." (AR 18.)

The Court finds that the ALJ's determination that medical improvement had occurred is supported by the evidence. *See Hunt v. Astrue*, 295 F. App'x 878, 879 (9th Cir. 2008) (affirming a finding of medical improvement when the claimant did not consult a physician regarding her impairments for six years, and subsequent treatment was "far less frequent and extensive" than her treatment prior to the CPD). Because the ALJ found that Plaintiff's impairments no longer met or equaled the same listing that was used to find Plaintiff disabled at the CPD, Plaintiff's medical improvement was therefore related to his ability to work. *See* 20 CFR § 404.1594(c)(3)(i).

### C. The RFC Is Supported By Substantial Evidence

Plaintiff contends that the ALJ erred in formulating the RFC without considering Plaintiff's depression, anxiety, side effects from medication, and back pain. (JS 25.)

#### 1. Applicable Legal Standard

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR § 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by

medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

/ / /

/ / /

### 2. Discussion

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 19.)

The ALJ "primarily" based his RFC assessment on the disability hearing officer's decision, which also determined that Plaintiff was capable of similar limitations. (AR 19, 84-85.) The ALJ found that this report was consistent with the opinions of state agency doctors and consultative examiners. (AR 19; *see* AR 429-66.) Those opinions indicated that Plaintiff was capable of "at *least* less-than-light work" (AR 447) and was able to understand, remember, and carry out simple work-related tasks with no significant limitations in the ability to sustain concentration, persistence, or pace; relate to others; or otherwise adapt to the requirements of the normal workplace (AR 431, 461). The ALJ was permitted to rely upon these reports in assessing Plaintiff's RFC. *See Magallanes*, 881 F.2d at 752 ("[T]he reports of consultative physicians called in by the Secretary may serve as substantial evidence.").

Reviewing the medical records, the ALJ found that the minimal treatment records "reflect essentially normal findings with a good response to medications." (AR 19.) A March 31, 2013 MRI revealed no evidence of acute fracture or malalignment of the lumbrosacral spine. (AR 408.) Plaintiff had a broad-based

central disc protrusion at the L4-L5 level with posterior annular tear and associated mild central canal stenosis, but no neural foraminal narrowing. (*Id.*) At a consultative examination on March 12, 2013, Plaintiff's cervical spine was tender to palpation and lumbar spine was tender to percussion. (AR 416-17.) Plaintiff's forward flexion was limited to 50 degrees, and straight leg raise caused pain in the right paravertebral muscles of the lumbar spine. (AR 417). Regarding Plaintiff's

///

umbilical hernia, records show mild tenderness to palpation and pain caused by heavy lifting. (AR 415.)

Plaintiff argues that the ALJ improperly disregarded his testimony about medication side effects, including nausea and drowsiness, and failed to consider those side effects in the RFC assessment. (JS 9-10, 22, 25, 30-31.) Specifically, Plaintiff argues that the ALJ "disregarded [Plaintiff]'s testimony as to the negative effect of his medications" (JS 9), "erred in failing to properly consider the effects of [Plaintiff]'s numerous medications" on his functional abilities (JS 10), "failed to properly evaluate . . . the effects of his medications" (JS 22), "failed to consider . . . the sedating effects of his medications" (JS 25), and must consider the effects of drug therapy (JS 30-31). Plaintiff testified that his muscle relaxant makes him "drowsy and sleepy and foggy" and his antidepressant and antianxiety medications caused nausea and occasional dizzy spells. (AR 39, 42-43.) However, the ALJ gave Plaintiff's subjective allegations "little weight" after finding that Plaintiff's testimony about his symptoms was not credible.[5] (AR 21.) The ALJ additionally

---

[5] The ALJ noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 21.) Although the use of this boilerplate language is not itself reversible error, "it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC." *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.6 (9th Cir. 2017). Here, the ALJ proceeded to discuss the evidence, and he

15

noted that Plaintiff denied having side effects during a December 2013 follow-up evaluation where Plaintiff sought medication refills. (AR 21, 493.) After finding Plaintiff's testimony not credible, the ALJ did not subsequently err in omitting limitations based on that discredited testimony. *See Stenberg v. Comm'r Soc. Sec. Admin.*, 303 F. App'x 550, 552 (9th Cir. 2008) (after an ALJ found a claimant not credible, "he was not required to include limitations that she claimed in reliance solely on her subjective reports of pain"); *Peralez v. Astrue*, No. ED CV 09-01342-VBK, 2010 WL 582058, at *1-2 (C.D. Cal. Feb. 11, 2010) (finding no error when an ALJ failed to make findings related to a claimant's complaints about medication side effects in light of an unchallenged adverse credibility determination).

As previously discussed, the ALJ also permissibly excluded the severe mental limitations posed by Dr. Levin's opinion. (AR 19-20.) *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of [the claimant]'s treating physicians, which were permissibly discounted.").

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform "a reduced range of light work" because "[t]here is no such thing as a 'reduced range of light work'" and "[a] level of work must be in the category of exertion presented." (JS 27-28.) Although an ALJ may use the "well-defined function-by-function parameters" set forth in 20 CFR 404.1567, the ALJ may modify those standard limitations to account for a claimant's individual abilities. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627-28 (9th Cir. 2011) (finding that an ALJ properly set forth an RFC defined as "sedentary" that also included a sit-stand option and noted that the claimant's concentration, persistence, and pace would be limited). Here, the ALJ did not stop his assessment after categorizing Plaintiff's

---

provided specific reasons and findings for his adverse credibility determination. (*See* AR 21.) Accordingly, the Court does not find error in the use of this language. *Cf. Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

16

functional capacity as being able to perform a "reduced range of light work." The ALJ proceeded to make findings on each of Plaintiff's functional limitations and abilities, thereby noting the differences between a standard full range of light work and Plaintiff's actual functional abilities. (*See* AR 19.)

Plaintiff also contends that, based on the ALJ's hypothetical questions, the VE defined Plaintiff's work level as "sedentary." (JS 28.) In response to the ALJ's hypothetical, the VE gave examples of "sedentary, unskilled work" that could be completed by someone with Plaintiff's limitations. (AR 51-52.) However, the VE's response does not indicate the ALJ erred in formulating the RFC or finding that Plaintiff could perform "a reduced range of light work." The VE "merely translates factual scenarios into realistic job market probabilities," and it is solely the ALJ's role to assess the evidence and the validity of medical opinions. *Sample v. Schweiker*, 694 F.2d 639, 643-44 (9th Cir. 1982).

The Court finds that, based on the record as a whole, the ALJ's RFC assessment is supported by substantial evidence.

### D. The ALJ Properly Determined That Plaintiff Could Perform A Significant Number Of Jobs

Plaintiff contends that the ALJ erred in relying on answers to a hypothetical that excluded some of Plaintiff's mental limitations and the effects of medications. (JS 33.)

#### 1. Applicable Legal Standard

If a claimant shows that he or she cannot perform past relevant work, it is the Commissioner's burden to establish that, considering the RFC, the claimant can perform other work. *Embrey*, 849 F.2d at 422. To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do, and (2) the availability of those jobs in the national economy. *Id.* at 1101. These hypotheticals must depict the

17

claimant's disability in a manner that is "accurate, detailed, and supported by the medical record" and "set[s] out all of the claimant's impairments." *Id.* (citing *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987)). The VE's testimony "is valuable only to the extent that it is supported by medical evidence." *Sample*, 694 F.2d at 644. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national

///

economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

### 2. Discussion

At the hearing, the ALJ posed the following hypothetical to the VE:

> I would like you to consider a hypothetical individual ranging in age from . . . roughly 33 to 40 some who has a high school education and work experience as you described. I would like you to assume that this individual is limited to a range of light to sedentary work as follows. Can lift and/or carry 20 pounds occasionally and 10 pounds frequently; walk, is able to walk and/or stand for four hours of an eight-hour work day, sit for six hours of an eight-hour work day, both with normal breaks; is limited to occasional walking over uneven terrain, climbing ladders, and working at heights. Otherwise is able to frequently climb ramps, stairs, balance, kneel, and crawl. I will add occasionally stoop also. Furthermore, the individual would be limited to understanding, remembering, and carrying out simple, repetitive tasks.

(AR 51.) The VE testified that a person with those limitations could not perform Plaintiff's past work as a sales attendant, stock clerk, or orderly. (*Id.*) The VE then indicated that a person with those restrictions "could do a full range of sedentary, unskilled work." (AR 51-52.) The VE identified product inspector, hand cutter, and product assembler as representative jobs. (AR 52.) The ALJ then added a

limitation of "no more than occasional public contact," but the VE testified that the additional limitation did not affect his response. (*Id.*)

Plaintiff contends that the hypothetical is deficient because it fails to reflect all of Plaintiff's mental limitations. (JS 34.) Plaintiff also notes that when his attorney posed a hypothetical that included marked limitations in "ability to understand, remember very short and simple instructions and carry out very short and simple instructions," the VE stated that those limitations would change his earlier opinion. (JS 34; *see* AR 53-54.) However, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." *Magallanes*, 881 F.2d at 756 (citing *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986)). When a claimant's counsel poses a hypothetical that is more restrictive than the ALJ's hypothetical, the ALJ is "free to accept or reject those restrictions" based on the ALJ's evaluation of the evidence. *Martinez*, 807 F.2d at 774. As discussed above, the ALJ's RFC determination—which omitted the additional limitations presented by Plaintiff's counsel—is supported by substantial evidence. The ALJ posed a hypothetical containing limitations that were identical to the limitations found in Plaintiff's RFC. Consequently, the limitations in the hypothetical are also supported by substantial evidence.

By posing a hypothetical that was supported by substantial evidence, the ALJ did not err in excluding additional restrictions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (finding that, because the ALJ's RFC assessment was proper and complete, the ALJ's hypothetical based on the RFC was also proper and complete); *Sample*, 694 F.2d at 644 ("[T]he limitation of evidence contained in the hypothetical at issue would be objectionable only if the assumed facts could not be supported by the record."). Accordingly, the ALJ properly relied on the VE's testimony to determine that Plaintiff was capable of performing other work. *See Bayliss*, 427 F.3d at 1217 (finding that an ALJ properly relied on a VE's testimony in response to a hypothetical that "contained all of the limitations that the

ALJ found credible and supported by substantial evidence in the record"); *Sampson v. Astrue*, 441 F. App'x 545, 547 (9th Cir. 2011) ("Because the ALJ's hypothetical to the [VE] encompassed the RFC and the VE identified available jobs in the national and local economy, the ALJ's finding of no disability was supported by substantial evidence.").

/ / /

/ / /

/ / /

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 20, 2017

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**